**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **HY-KO PRODUCTS COMPANY, *et al.*,** | ) | **CASE NO. 5:08cv1961** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **JUDGE DOWD** |
| v. | ) | |
| | ) | |
| **THE HILLMAN GROUP, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

**BRIEF IN OPPOSITION TO HILLMAN'S MOTION TO DISMISS HY-KO'S
DECLARATORY JUDGMENT CLAIMS RELATING TO THE '747 PATENT**

---

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. BACKGROUND ................................................................................................... 1

    A.     Hillman initiated the '747 patent dispute and should not now be allowed to unilaterally, self-servingly, and unfairly resolve both its and Hy-Ko's claims. .....................................................................................................................1

    B.     Hy-Ko has expended substantial time and money attempting to resolve its patent disputes with Hillman, which Hillman initiated. .........................................3

    C.     The KZA-200 key-cutting machine includes technology that Hillman refuses to dismiss, and by its refusal undermines Hy-Ko's efforts to resolve its entire dispute with Hillman. .................................................................4

    D.     Hillman's refusal to dismiss all technologies related to the '747 patent frustrates the purpose of this declaratory judgment action, if Hy-Ko's claims are swept up in that dismissal. .........................................................................5

III. LAW AND ARGUMENT ...................................................................................... 8

    A.     An actual and present controversy exists between Hy-Ko and Hillman relating to the '747 patent. .......................................................................................8

    B.     Hillman's dismissal of its claims of infringement relating to the '747 patent and offer of a limited covenant not to sue do not extinguish the controversy between Hy-Ko and Hillman relating to the '747 patent......................9

    C.     Hy-Ko is engaged in present activity placing it at risk of an infringement suit. .......................................................................................................................13

    D.     This Court should exercise its jurisdiction over the declaratory judgment claims relating to the '747 patent. .......................................................................14

IV. CONCLUSION ..................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352 (Fed. Cir. 2004)................8, 14, 15

*FieldTurf USA, Inc. v. Sports Construction Group, LLC*, 507 F. Supp. 2d 801 (N.D. Ohio 2007) ...........................................................................................................................11

*Furminator, Inc., v. Ontel Products Corp.*, 246 F.R.D. 579 (E.D. Mo. 2007) .............................11

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953 (Fed. Cir. 1987) ....................14

*Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) ...................................................................................15

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) .......................................8

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).....................................................8, 14

*Micron Tech. Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008).......................................8

*SanDisk Corp. v. STMicroelecs, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) .....................................8, 9

*Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) .............................................................................................................................11

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ..........................................................................14

### FEDERAL STATUTES

35 U.S.C. §§ 311-318 ...................................................................................................................15

28 U.S.C. § 2201(a) .......................................................................................................................8

## I.      INTRODUCTION

The Hillman Group, Inc. ("Hillman") planned, calculated, and then expanded this litigation in April to include patent infringement claims to include U.S. Patent No. 6,064,747 (the "'747 patent").  Now, under the guise of "streamlining" the litigation Hillman urges this Court to resolve all of Hillman's counterclaims and Hy-Ko Products Company and Aurora Properties Holding Company, LLC's (collectively, "Hy-Ko's") claims relating to '747 patent by narrowing and thus unfairly dismissing only those claims pertaining to particular versions of the KZA-100 and -200 key-cutting machines.  Hy-Ko, on the other hand, asserts that a proper resolution will either:

1.      Allow Hy-Ko's claims for non-infringement and invalidity of the '747 patent as amended in May of this year to fully run their course to a judicial declaration, or

2.      Require the parties to agree to dismiss the '747 patent claims and counterclaims as to all technology that has been revealed and put in use during the course of this litigation.

Anything short of  a *full* dismissal will leave Hy-Ko exposed to exactly the type of threatened litigation that it sought to end by bringing this declaratory judgment action, and the prospect of such future litigation appears to constitute part of Hillman's competitive strategy.  Accordingly, to the extent that Hillman declines to dismiss its '747 patent claims as to *all technology revealed and fielded* related to the KZA-100 and -200 key-cutting machines in this litigation, Hy-Ko opposes Hillman's Motion to Dismiss.

## II.      BACKGROUND

**A.      Hillman initiated the '747 patent dispute and should not now be allowed to unilaterally, self-servingly, and unfairly resolve both its and Hy-Ko's claims.**

Indeed, it was Hillman that first brought the '747 patent into this dispute.  Just four months ago, Hillman sought leave to file its Second Amended Answer Including Counterclaims

of Infringement Against Plaintiffs *Instanter*.  Those newly-added counterclaims included allegations of infringement against Hy-Ko relating to Hillman's '747 patent.  Hy-Ko immediately filed its own Second Amended Complaint, in which it asked this Court for a judicial declaration of noninfringement and invalidity of the '747 patent.

Now, in an apparent effort to keep Hy-Ko under a cloud of impending litigation, Hillman seeks to dismiss its counterclaims relating to the '747 patent in an unfair and limited manner, and also to have Hy-Ko's declaratory judgment claims relating to the '747 patent dismissed for lack of subject matter jurisdiction.  Hillman seeks to undermine Hy-Ko's claims through hit-and-run tactics by which it first asserted broad claims against Hy-Ko's *exemplary* key-cutting machines, gathered information through discovery concerning Hy-Ko's future plans, and now attempts to narrowly dismisses its broadly-asserted claims against specific—not exemplary—Hy-Ko machines.  In other words, at the time of Hillman's filed counterclaims, Hy-Ko's KZA-100 and -200 were, according to Hillman, merely "*exemplary*" of Hy-Ko's alleged infringement, but now, four months later, and after Hillman has learned of additional technology, Hillman asserts that specific versions of the KZA-100 and -200 constitute the entire '747 patent dispute.  Hy-Ko urges the Court to deny Hillman's Motion to Dismiss Hy-Ko's Declaratory Judgment Claims Relating to the '747 Patent because, despite Hillman's disingenuous attempt to suggest otherwise, a real and justiciable controversy exists with respect to Hy-Ko's non-infringement of the '747 patent, and as well, to the invalidity of the '747 patent.

Hillman's offer of dismissal does not resolve the issues between the parties, but is instead a device to preserve a cloud of uncertainty and hamper Hy-Ko's efforts to improve the machines that have provided Hillman with substantial competition.  Permitting Hy-Ko's declaratory judgment claims relating to the '747 patent to remain in this lawsuit is the only fair way to

provide Hy-Ko any certainty and predictability as to any alleged infringement of its machines.

Alternatively, if Hillman wishes to dismiss its '747 claims, it should do be required to do so as to

all of Hy-Ko's current technology.

**B.      Hy-Ko has expended substantial time and money attempting to resolve its patent disputes with Hillman, which Hillman initiated.**

After more than 15 months of litigation regarding whether Hy-Ko's key-cutting machines

infringe Hillman's U.S. Patent No. 7,114,894 ("the '894 patent") or whether that patent is valid,

Hillman finally inspected those machines on April 9, 2009.  Three weeks later after spending

hours poring over Hy-Ko's machines, Hillman, apparently believing that it had a good faith

factual and legal basis to do so, brought additional claims alleging that the Hy-Ko machine also

infringed its '747 patent ("Additional Counterclaims").  In its Additional Counterclaims, Hillman

alleged that, upon information and belief, "without authorization, consent, or permission, Hy-Ko

is making, using, selling, or offering to sell key-cutting devices that infringe one or more claims

of the '747 patent" and that "such key-cutting devices have been provided to Wal-Mart retail

stores for use therein."  (Additional Counterclaims, ¶ 23.)  Hillman then for purposes of its

infringement allegations identified the Hy-Ko machines, Model No. KZA-100 and Model No.

KZA-200, as *exemplary* key-cutting devices.  (*Id*.)  Hillman additionally alleged that "Hy-Ko's

infringement of the '747 patent has been and continues to be intentional, willful, and deliberate."

(*Id*., ¶ 24.)

As of May 8, 2009, the litigation has included issues of whether the '747 patent is

infringed, or is even valid ("the '747 litigation").  Since then, Hy-Ko has exerted considerable

efforts to advance the '747 litigation, including drafting and issuing requests for production and

interrogatories to Hillman related to the '747 patent, retaining and conferring with a technology

expert, and assembling documents related to the '747 patent.  The '747 litigation has been costly

and time-consuming, and has delayed resolution of the '894 patent issues.  The costs of the '747

patent litigation also have involved third-party efforts to comply with Hillman's discovery

requests.  These are all sunk costs that should not have to be reinvested at some future time.

      **C.**    **The KZA-200 key-cutting machine includes technology that Hillman refuses to dismiss, and by its refusal undermines Hy-Ko's efforts to resolve its entire dispute with Hillman.**

Hy-Ko initially manufactured and leased approximately 116 KZA-100 integrated key

identification and cutting machines in March 2007.  Shortly thereafter, Hillman alleged that the

key-cutting portion of the integrated KZA-100 machine infringed the '894 patent.  Prior to

Hillman's initiation of a lawsuit in the District of Arizona, Hy-Ko commenced a program to

develop the next generation of an integrated key identification and key-cutting machine, the

KZA-200.

The KZA-200 has a number of improvements directed to the key-cutting and key

identification systems.  Hy-Ko has, as of the date of this filing, manufactured an initial

production run of 164 KZA-200 machines that include the improved key-cutting and an interim

key identification systems.  The completed KZA-200 key identification system includes two

primary elements partially present, but not activated, in the initial production of KZA-200

systems previously deployed to Wal-Mart stores: (a) bitting analysis and (b) groove scanning

using an additional camera and light source (the "Completed KZA-200 Key Identification

System").  The interim key identification system included in the initial production run of KZA-

200 systems has the software and many hardware elements necessary to incorporate the

Completed KZA-200 Key Identification System.  Hy-Ko has completed the development of the

Completed KZA-200 Key Identification System, and has placed such a system in a Wal-Mart

store in Macedonia, Ohio for testing.  The elements of the Completed KZA-200 Key

Identification System are known to Hillman and are not speculative.

Now, remarkably on the heels of initiating the '747 litigation, Hillman seeks to dismiss its claims related to the '747 patent, but is attempting to do so in a manner that limits the dismissal with prejudice only to the "accused" *exemplary* KZA-100 and KZA-200 machines.  This is after obtaining documentary discovery pertaining to Hy-Ko's key identification technologies (technologies Hillman alleged read on its '747 patent) incidental to discovery pertaining to the '894 patent, after inspecting Hy-Ko's machines, and after taking several depositions at which Hillman raised issues implicating potential '747 claims against the Completed KZA-200 Key Identification System.  Also remarkable is the fact that, although Hillman has issued subpoenas to third parties for information pertaining to the '747 patent, Hillman now moves this Court to dismiss the '747 claims although in the months following filing, Hillman has not requested or obtained additional document discovery from Hy-Ko related to key identification beyond that produced incidental to the '894 patent discovery.

Although Hillman has made it clear from the outset of its '747 patent allegations of infringement that the KZA-100 and -200 machines were only exemplary, it now wishes to leave the door wide open for a future lawsuit related to the Completed KZA-200 Key Identification System, technology that it has been made aware of through this action.

> **D.      Hillman's refusal to dismiss all technologies related to the '747 patent frustrates the purpose of this declaratory judgment action, if Hy-Ko's claims are swept up in that dismissal.**

Hillman seeks to divert Hy-Ko from making continued competitive and technological improvements to its machines by causing Hy-Ko to guess when, why, and where Hillman will choose to reinitiate '747 patent litigation once the imminent rollout of the Completed KZA-200

Key Identification System is completed.[1]  Hillman also attempts to frustrate Hy-Ko's ability to raise capital for the manufacture of its improved technology; for example, lenders may be reluctant to lend monies to companies making allegedly infringing products with borrowed funds.  Hillman's strategy has calculated such a result.  If Hillman cannot be put to its proofs now, it will continue to face Hy-Ko with the prospect of future litigation and hinder Hy-Ko's efforts in the marketplace.

While Hy-Ko agrees that neither the KZA-100 nor KZA-200 key identification systems currently in Wal-Mart stores infringe any claim of the '747 patent, and that a dismissal of those claims with prejudice is appropriate, a dismissal of only Hillman's claims as to the KZA-100 and interim KZA-200 key identification systems leaves Hy-Ko with the same spectre of litigation that it had when Hillman first amended its counterclaims to include an allegation of infringement of the '747 patent.  Although Hillman claims that the Completed KZA-200 Key Identification System contains new features unknown to Hillman (Hillman's Memo. in Spt. of Mot. to Dismiss at 8, Dckt. 52), Hillman is and has been aware that Hy-Ko's key identification technology has evolved beyond what was placed in Wal-Mart stores in the KZA-100 and initial production of the KZA-200 machines.  Further, Hy-Ko has offered Hillman the opportunity to inspect Hy-Ko's Completed KZA-200 Key Identification System, but Hillman has declined that invitation.[2]

Additionally, Hy-Ko has asked Hillman for a covenant not to sue on the Completed KZA-200 Key Identification System, but Hillman has also declined that offer.  Hillman's refusal

---

[1] Hillman is litigious by nature as evidenced by the fact that it filed a lawsuit against Hy-Ko in December of 2007 in Arizona where personal jurisdiction did not exist.  That case was properly dismissed, but only after costing Hy-Ko tens of thousands of dollars and over a year's worth of time.

[2] On September 4, 2009, counsel for Hy-Ko offered for at least the second time to make the Completed KZA-200 Key Identification System fully available *immediately* for Hillman's physical inspection pursuant to Fed. R. Civ. P. 34 and to engage in further highly-expedited discovery so that Hillman could satisfy any further need for information it purported to have.  Hillman refused and rather erroneously stated that there was no dispute between the parties on this technology.  The clear effect of Hillman's refusal is to leave a specter of litigation hanging over Hy-Ko's head.  The email exchange between counsel for the parties is attached as Exhibit A.

to enter into a covenant not to sue respecting the Completed KZA-200 Key Identification System shows Hillman's preparedness to sue Hy-Ko respecting the '747 technology.

Therefore, the following facts create a real and justiciable controversy:

- The Completed KZA-200 Key Identification System has been made and in use for months and is currently in a Wal-Mart store;

- Hillman has a present ability to sue Hy-Ko for the Completed KZA-200 Key Identification System;

- Hillman has documents relating to the Completed KZA-200 Key Identification System;

- Hillman has asked third parties for documents relating to the Completed KZA-200 Key Identification System;

- Hy-Ko has offered Hillman the opportunity to inspect the Completed KZA-200 Key Identification System, but Hillman has refused; and

- Hillman has refused to enter into a covenant not to sue respecting the Completed KZA-200 Key Identification System.

Unless Hillman is willing to give Hy-Ko a complete release as to all '747 claims against the KZA-100, interim KZA-200 key identification system, and Completed KZA-200 Key Identification System, not merely a limited covenant as Hillman is unreasonably offering now, a real and justiciable controversy is ripe for judicial adjudication with respect to non-infringement and the invalidity of the '747 patent.

Accordingly, because Hy-Ko is entitled to judicial certainty, this Court should deny Hillman's Motion to Dismiss Hy-Ko's Declaratory Judgment Claims Relating to the '747 patent.

### III.     LAW AND ARGUMENT

**A.     An actual and present controversy exists between Hy-Ko and Hillman relating to the '747 patent.**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Supreme Court has defined "case of actual controversy" to mean one that is "definite and concrete, touching the legal relations of parties having adverse legal interests," and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Patent litigation "is particularly adapted to declaratory resolution."  *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1357 (Fed. Cir. 2004).  The Federal Circuit has remarked that "[w]hether intended or not, the now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases.  *Micron Tech. Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008) (internal citations omitted)."

The Supreme Court has summarized this test as requiring a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do."  *SanDisk Corp. v. STMicroelecs, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

8

Here, Hillman has put Hy-Ko in a position of either pursuing arguably illegal behavior by rolling out the Completed KZA-200 Key Identification System, or abandoning that system. Hillman has already brought infringement claims against Hy-Ko pursuant to the '747 patent, and the fact that Hillman refuses to provide a covenant not to sue respecting a Completed KZA-200 Key Identification System that is currently in a Wal-Mart store is evidence of a real and substantial controversy where adverse legal interests are at issue.

**B.**      **Hillman's dismissal of its claims of infringement relating to the '747 patent and offer of a limited covenant not to sue do not extinguish the controversy between Hy-Ko and Hillman relating to the '747 patent.**

As explained by the Federal Circuit in *SanDisk*, "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party," and "where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights."  *Id*.

The basis of the controversy—Hillman's present ability to sue Hy-Ko for patent infringement of the '747 patent—is not changed just because Hillman has decided to dismiss its claims of infringement of the '747 patent by the KZA-100 and -200.  A claim for infringement of the '747 patent may still be brought by Hillman against the Completed KZA-200 Key Identification System.

In *SanDisk*, the Court found that a statement that the patentee will not sue is not enough to eliminate the controversy because even a patentee's promise not to sue will not nullify an actual controversy if certain acts have already been committed.  *SanDisk*, 480 F.3d at 1382-83. If a defendant has engaged in "a course of conduct that shows a preparedness and willingness to enforce its patent rights" despite defendant's statement that it would not sue plaintiff, a justiciable controversy still remains.  *Id*.

9

Like the defendant in *SanDisk*, Hillman has engaged in a course of conduct that shows willingness and preparedness to enforce its patent rights despite any statements to the contrary.

> **1.      Hillman has shown a willingness to sue Hy-Ko respecting the '747 technology and continues to threaten suit  respecting the Completed KZA-200 Key Identification System.**

Hillman brought an action against Hy-Ko related to the '747 patent, and thus Hillman has shown a willingness to sue Hy-Ko respecting the '747 technology.  This is not a situation where Hillman has stated from the beginning that it will not accuse the Hy-Ko key-cutting machines of infringement.  On the contrary, Hillman has repeatedly demonstrated a willingness to accuse Hy-Ko key-cutting machines of infringement.  First, on November 9, 2007, Hillman sent Hy-Ko a letter in which Hillman accused certain Hy-Ko key-cutting machines of infringement. (attached as Exh. C to Hy-Ko's Sec. Amnd. Complt., Dckt. 37)  Then on December 4, 2007, Hillman filed Civil Action 2:07-cv-02446-ECV, in the U.S. District Court for Arizona, accusing Hy-Ko key-cutting machines of infringement.  The court did not have personal jurisdiction over Hy-Ko, and ultimately this action was dismissed.  Then on April 30, 2009, after 17 months had passed from Hillman's first accusation of infringement, Hillman sought to add a new patent to the current action, thus delaying ultimate resolution of alleged infringement.  Now, Hillman seeks to continue to delay the parties' resolution of the patent disputes by failing to release claims of infringement of the '747 patent against the Completed KZA-200 Key Identification System.

Hillman's allegations of infringement by the KZA-200, followed by its refusal to dismiss the Completed KZA-200 Key Identification System, demonstrates a live threat of litigation.

    2.       **Hillman's refusal to enter into an unconditional covenant not to sue shows Hillman's preparedness to sue Hy-Ko respecting the '747 technology and is further evidence of an actual controversy between the parties.**

Hillman has refused to enter into an unconditional covenant not to sue because such a covenant would end Hy-Ko's uncertainty as to infringement.  In *Furminator, Inc., v. Ontel Prods. Corp.*, 246 F.R.D. 579, 593 (E.D. Mo. 2007), the court concluded that "plaintiff's covenant not to sue destroys this Court's subject matter jurisdiction over defendants' declaratory judgment counterclaims because it eliminates the case or controversy raised in those counterclaims, and the same should therefore be dismissed without prejudice."  Unlike an unconditional covenant not to sue, a conditional promise not to sue is insufficient to eliminate an otherwise live controversy between the parties.  *FieldTurf USA, Inc. v. Sports Constr. Group, LLC,* 507 F. Supp. 2d 801, 805 (N.D. Ohio 2007) (where FieldTurf's covenant not to sue was not sufficiently unconditional as to eliminate the controversy between the parties).  A conditional promise not to sue, like the promise not to sue in *Super Sack*, a case Hillman relies on, includes any product currently made or sold by an accused infringer.  *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995).

Here, Hillman has not offered Hy-Ko an unconditional release—a release as to all products currently made or used at the time of the covenant.  Hillman has only offered to release *some* of the alleged products in use.  Hy-Ko, on the other hand, has offered to enter into a covenant not to sue with Hillman as to the KZA-100, interim KZA-200 key identification system, and the Completed KZA-200 Key Identification System in an attempt to resolve the dispute and end the controversy between the parties with respect to the '747 claims.  Hillman's refusal to enter into a covenant not to sue respecting the Completed KZA-200 Key Identification

System, even though that system has been in use and has been implemented in the field, leaves Hy-Ko with virtually no comfort respecting a future lawsuit on the '747 patent.

This infringement dispute should not be permitted to persist unresolved while Hillman deliberates over the most advantageous time and place to file suit.  An actual controversy exists now and should be resolved.

### 3. The Completed KZA-200 Key Identification System is not unknown to Hillman.

Hillman already has discovery related to the Completed KZA-200 Key Identification System.  Hillman has obtained evidence relating to design modifications, including information on the most recent version of Hy-Ko's key identification system, with  groove scanning and bitting analysis.  Hillman, for example, has elicited testimony during depositions on this topic. During the deposition of William Mutch, Hillman learned information about the Completed KZA-200 Key Identification System, such as groove scanning, backlighting, number of light sources, and the fact that Hy-Ko was testing the Completed KZA-200 Key Identification System. (Mutch dep. at 140-41, attached as Exh. B.)

Additionally, Hillman has issued discovery requests to Hy-Ko's third-party engineers requesting documents and things pertaining to the Completed KZA-200 Key Identification System.  In Hillman's subpoenas to both Belcan Corp. and ADS Engineering & Design, Inc., Hillman requested documents relating to "Hillman's Patent(s)," as defined as "United States Patent Nos. 7,114,894 and 6,064,747."  In these subpoenas, Hillman requested documents and things relating to "Hy-Ko Key-Cutting Machines," defining that phrase to include not only "the machines styled as Model No. KZA-100 and Model No. KZA-200," but also to include "any predecessors or *modifications* to such machine(s)."  (Emphasis added.)  (Subpoenas, attached as Exhs. C & D.)  There is no disputing the fact that these requests for documents were clearly

12

aimed at both key-cutting and key identification documents, and included the KZA-100, the

interim KZA-200 key identification system, and the Completed KZA-200 Key Identification

System.

It would be unjust to dismiss Hy-Ko's claims relating to the '747 patent without

adjudicating the Completed KZA-200 Key Identification System, a system that Hillman

possesses information and knowledge about.  A dismissal here would only allow Hillman to

pursue its claims against Hy-Ko for infringement of the '747 patent by the Completed KZA-200

Key Identification System at some other time and place of Hillman's choosing.

     **C.**       **Hy-Ko is engaged in present activity placing it at risk of an infringement suit.**

This case is much larger than that of a would-be competitor seeking to test the waters by

way of an advisory judicial opinion on an adverse patent.  Hy-Ko is currently engaged in present

activity placing it at risk of an infringement suit by Hillman, and thus has a strong legal interest

to resolve all litigation relating to the '747 patent.

The Completed KZA-200 Key Identification System has been placed in the marketplace.

While Hy-Ko recognizes that once Hillman amends its Complaint following its Motion to

Dismiss, Hillman will not be able to sue Hy-Ko for infringement of the '747 patent by certain

machines, Hillman nevertheless attempts to carve out an exception so that it may sue Hy-Ko on

the Completed KZA-200 Key Identification System in the future.  This is a system that  has been

made and put in use prior to the offer of Hillman's covenant not to sue.  This system has already

been implemented in the field.

The Completed KZA-200 Key Identification System is not a product "in the pipeline" as

Hillman contends.  Instead, the Completed KZA-200 Key Identification System is a system that

was completed months ago and is currently in commercial use.  Hy-Ko's declaratory action

relating to the '747 patent is not a request for an "advisory opinion."  Hy-Ko meets the

*MedImmune* requirement of "sufficient immediacy and reality" when the entirety of the circumstances are considered.  *MedImmune*, 549 U.S. at 127.

Hy-Ko respectfully requests that this Court resolve the ripe and justiciable controversy currently real and immediate between Hy-Ko and Hillman, so Hy-Ko may gain certainty and predictability as to all of its machines currently in commercial use.

> **D.      This Court should exercise its jurisdiction over the declaratory judgment claims relating to the '747 patent.**

If there is a case of actual controversy, the analysis then shifts to whether or not the court should exercise its jurisdiction over the action.  "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (internal citations omitted).  Although district courts possess discretion, the Federal Circuit has stated that "[t]here must be well-founded reasons for declining to entertain a declaratory judgment action." *Capo*, 387 F.3d at 1355.  When the "objectives for which the Declaratory Judgment Act was created" are served, discretionary dismissal is "rarely proper." *Id.* "[T]he purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987).

The purpose of the Declaratory Judgment Act in patent cases is well-served by adjudicating Hy-Ko's claim for declaratory relief.  First, Hillman has previously accused Hy-Ko key-cutting machines of infringement of the '747 patent, citing the KZA-100 and -200 as allegedly infringing "exemplary" machines.  By agreeing to dismiss the allegations of infringement against the KZA-100 and -200 only, Hillman creates "uncertainty and insecurity" for Hy-Ko over its rollout of the completed key identification system in its machines.

Additionally, Hillman is creating "uncertainty and insecurity" in the marketplace because Wal-Mart stores have a Completed KZA-200 Key Identification System.  The only way to properly resolve this uncertainty and insecurity for Hy-Ko and the marketplace is by declaratory relief respecting non-infringement and invalidity of the '747 patent.

Second, the public interest is served by adjudicating Hy-Ko's declaratory judgment action.  "[P]atent rights are of competitive impact as well as innovation incentive," *Capo*, 387 F.3d at 1358, and the public interest favors challenges to patents of dubious validity.  *See, e.g.*, *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969).  Hillman should not be permitted to avoid prompt resolution of all issues surrounding the '747 patent.  These issues directly affect the public interest, and Hillman will use allegations of infringement of the '747 patent to hinder Hy-Ko's expansion in the marketplace.

Finally, Hy-Ko's declaratory judgment claims of non-infringement of the '747 patent and invalidity of the '747 patent is the only full and fair resolution.  Hillman's argument that Hy-Ko should file a reexam with the U.S. Patent and Trademark Office ("USPTO") as to the '747 patent rings hollow.  Because the '747 patent was filed prior to November, 1999, this patent is only eligible for an *ex parte* reexamination, not an *inter partes* reexamination where Hy-Ko would be able to participate in the process.  *See* 35 U.S.C. §§ 311-318.  Hy-Ko would only be permitted to provide copies of the prior art and an explanation of the reasons why the patent is invalid based on prior art.  All patents filed after November, 1999 are eligible for an *inter partes* reexamination, which allows the third party requesting the reexamine to actively participate in both the examination and appeal stages of the proceeding.  Because Hy-Ko's involvement would be extremely limited, there is a high potential that the reexamination process would not provide the resolution Hy-Ko needs.  Additionally, Hillman's largely empty suggestion amounts to no

15

more than a further delay of the resolution of issues in this case, seeking to cause Hy-Ko to spend additional time and money to clear the path for its key-cutting machines.  Even though Hy-Ko believes the '747 patent is invalid, in the event that the USPTO would find otherwise, Hy-Ko would have no full and fair resolution.  The looming threat of a future patent infringement lawsuit would persist.

Hillman chose to put its '747 patent at issue by seeking the Court's leave to file an Amended Answer with Amended Counterclaims alleging infringement of the '747 patent by Hy-Ko key-cutting machines.  Hillman should not now be allowed to withdraw such claims after Hy-Ko has revealed the technology of and rolled out the Completed KZA-200 Key Identification System.  Hillman's offer of a limited covenant not to sue does not provide Hy-Ko with the resolution it needs in order to compete in the marketplace.  The parties thus have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Accordingly, this Court has subject matter jurisdiction over Hy-Ko's declaratory judgment claims relating to the '747 patent and should exercise its jurisdiction and adjudicate Hy-Ko's declaratory judgment action.

Furthermore, Hillman should not be permitted to engage in forum shopping by moving to dismiss in this judicial district where Hy-Ko is headquartered, only later to bring suit for patent infringement in some other judicial district.

## IV.     CONCLUSION

Accordingly, for the reasons above, this Court should deny Hillman's Motion to Dismiss

Hy-Ko's Declaratory Judgment Claims Relating to the '747 Patent, allowing Hy-Ko's claims of

non-infringement of the '747 patent and invalidity of the '747 patent to remain in the lawsuit.

Respectfully Submitted,


/s/ Gary L. Walters
STEVEN S. KAUFMAN (0016662)
   *Steven.Kaufman@ThompsonHine.com*
JUDSON SCHEAF, III (0040285)
   *Judson.Scheaf@ThompsonHine.com*
MEGAN D. DORTENZO (0079047)
   *Megan.Dortenzo@ThompsonHine.com*
GARY L. WALTERS (0071572)
   *Gary.Walters@ThompsonHine.com*
HOLLY H. ARMSTRONG (0084054)
   *Holly.Armstrong@ThompsonHine.com*
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH  44114
Telephone: (216) 566-5500
Fax: (216) 566-5800

*Attorneys for Plaintiffs Hy-Ko Products Company*
*& Aurora Properties Holding Company, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Hy-Ko's Brief in Opposition to Hillman's Motion to Dismiss Hy-Ko's Declaratory Judgment Claims Relating to the '747 Patent was electronically filed on September 9, 2009.  A copy of the same will be served on counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing system.

    _/s/ Gary L. Walters_____
*One of the Attorneys for Hy-Ko Products*
*Company and Aurora Properties Holding*
*Company, LLC*