DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Hy-Ko Products Company, et al., | ) | |
| | ) | CASE NO.    5:08 CV 1961 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| The Hillman Group, Inc. | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

This patent case involves a dispute between competitors in the key-cutting machine
industry.  Plaintiffs Hy-Ko Products Company ("Hy-Ko") and Aurora Properties Holding
Company, LLC ("Aurora") (plaintiffs collectively, "Hy-Ko") seek a declaratory judgment of
noninfringement, invalidity, and unenforceability of two patents ("the '894 patent" and "the '747
patent") owned by Defendant The Hillman Group, Inc. ("Hillman").  ECF 37 (Second Amended
Complaint).  The Defendant Hillman has answered and counterclaimed for infringement as to
both patents.  ECF 38 (Second Amended Answer to Plaintiffs' Second Amended Complaint).

Presently before the Court is Hillman's Motion for Leave to Amend the Pleadings to
Dismiss its Claims for Infringement of the '747 Patent and to Dismiss Hy-Ko's Declaratory
Judgment Claims Relating to the '747 Patent.  ECF 52.  Hy-Ko has filed a Brief in Opposition to
Hillman's Motion to Dismiss Hy-Ko's Declaratory Judgment Claims Relating to the '747 Patent.
ECF 57.  Hillman has filed a Reply (ECF 58); and Hy-Ko has filed a Sur-Reply.  ECF 62.  For
the reasons that follow, the Court will deny the motion.

(5:08 CV 1961)

## I. BACKGROUND

A.  <u>Parties</u>:

Plaintiff Hy-Ko is an Ohio corporation having its principal place of business at 60 Meadow Lane, Northfield, Ohio.  Aurora is an Ohio LLC having the same principal place of business as Hy-Ko.  ECF 37 at ¶¶ 1, 2.  According to the Second Amended Complaint allegations, Hy-Ko was founded in 1949 and purports to be a premier supplier of numbers, signs, keys and accessories to the retail marketplace, including supplying and servicing the world's largest cooperative buying organizations, home centers, and mass merchants.  Hy-Ko's co-plaintiff Aurora owns the key-cutting machines at issue and leases the machines to Hy-Ko.  ECF 37 at ¶¶ 11-12.

Hillman is a Delaware corporation having its corporate offices in Cincinnati, Ohio.  ECF 37 at ¶ 3; ECF 38 at ¶ 3.  Hillman purports to have been founded in 1964 and to be a market leader in distributing hardware, letters, numbers, signs, keys and accessories, and engraving services in over 58 countries.  ECF 37 at ¶ 14; ECF 38 at ¶ 14.  Hillman holds legal title to U.S. Patent No. 7,114,894 ("the '894 patent") and U.S. Patent No. 6,064,747 ("the '747 patent").  The '894 patent is entitled "Key Cutting Machine and Method."  The '747 patent is entitled "Method and Apparatus for Using Light to Identify a Key." ECF 37 at ¶¶ 4-5 and Exhibits A and B; ECF 38 at ¶¶ 4-5.

B.  <u>Procedural Background</u>:

The case has had rather a complicated procedural history involving several different cases filed both here and in Arizona federal district court, but the Court will attempt to limit its

2

(5:08 CV 1961)

discussion to a summary of events necessary to gain an understanding of the motion presently

before the Court.

As filed on August 13, 2008 under the present case number (5:08 CV 1961), the case was

limited to a dispute over one of Hillman's two patents (the '894 patent); but on April 30, 2009,

Hillman added the other patent (the '747 patent) to the dispute by filing a  "Second Amended

Answer Including Additional Counterclaims of Infringement Against Plaintiffs". ECF 32-1. [1]

On May 8, 2009, Hy-Ko filed a Second Amended Complaint (ECF 37) adding the '747 patent to

Hy-Ko's plea for declaratory judgment of noninfringement, invalidity and unenforceability.  On

May 20, 2009, Hillman filed a Second Amended Answer to the Second Amended Complaint

(ECF 38), in which pleading Hillman restated its counterclaim for infringement of both the '894

patent and the '747 patent. [2]

Having sorted through the numerous pleadings and amended pleadings filed in this case,

the Court concludes that the controlling pleadings presently before the Court are the Second

Amended Complaint (ECF 37) and the Second Amended Answer to the Second Amended

---

[1]  Since the present case was filed by Hy-Ko as a declaratory judgment action for
noninfringement, invalidity and unenforceability, procedurally the case is somewhat confusing in
that the party alleging infringement (Hillman) is the defendant; and the parties defending the
infringement claims (Hy-Ko and Aurora) are the plaintiffs.

[2]  The docket does not reflect that Hy-Ko has responded to Hillman's restated
counterclaim set forth in the Second Amended Answer to the Second Amended Complaint (ECF
38).  But then Hillman did not label the relevant pleading (ECF 38) as an "Answer and
Counterclaim" but only as an "Answer" even though it contains the Counterclaim.  The Court
will grant leave until December 7, 2009 for Hy-Ko to respond to the Counterclaim set forth at
pp. 8-13 of ECF 38.

3

(5:08 CV 1961)

Complaint (ECF 38) which, as noted above, includes a restatement of Hillman's counterclaim for

infringement of both the '894 patent and the '747 patent.

In any event, within four months of adding the '747 patent to the dispute (and within

three months of restating its '747 counterclaim in ECF 38), on August 27, 2009, Hillman filed a

motion for leave to dismiss the '747 claims and to dismiss Hy-Ko's declaratory judgment action

as to those claims; and that is the issue now confronting the Court.

C.      The Pleadings:

As noted above, the controlling pleadings before the Court are the Second Amended

Complaint (ECF 37) and the Second Amended Answer to the Second Amended Complaint [and

Counterclaim for Infringement] (ECF 38). At Count 3, the Counterclaim states in relevant part as

follows:

> On information and belief . . . Hy-Ko is making, using, selling, or offering
> to sell key cutting devices that infringe one or more claims of [Hillman's] '747
> patent.  Such key cutting devices have been provided to Wal-Mart retail stores for
> use therein.  *Exemplary* infringing devices are identified as Model No. KZA-100
> and Model No. KZA-200.

ECF 38 at ¶ 23 (emphasis added) (*and see* identical language at ¶ 27 in Count 4 against Aurora).

As part of its Prayer for Relief, Hillman requests the Court to enter judgment in

Hillman's favor as follows:

> G.      Permanently enjoining [Hy-Ko and Aurora] . . . from infringing the '747
> patent, and from continuing to import, make, use, sell or offer to sell *any*
> products that infringe the '747 patent . . . .

ECF 38 at Prayer for Relief  ¶ (G) (emphasis added).

4

(5:08 CV 1961)

D. <u>Hillman's Motion to Dismiss</u>:

  Hillman has filed a two-branch motion.  First, it has moved for leave under Fed. R. Civ.

P. 15(a)(2) to amend its Second Amended Answer to voluntarily dismiss, with prejudice, its

infringement claims involving the '747 patent; and in support thereof states that it will

unconditionally covenant not to sue Hy-Ko for infringement of the '747 patent "based on the

accused KZA-100 and KZA-200 Hy-Ko products." ECF 52 at p. 6. [3]  Second, Hillman has

moved the Court to dismiss, for lack of subject matter jurisdiction, Hy-Ko's declaratory

judgment claims relating to the '747 patent.  Hillman claims that its voluntary dismissal and

covenant not to sue would eliminate any case or controversy with respect to the '747 patent, thus

divesting the Court of subject matter jurisdiction over Hy-Ko's declaratory judgment claims

relating to that patent.

  Hy-Ko objects for several reasons, but the principal reason is that Hillman's proffered

covenant is not, in Hy-Ko's view, broad enough to cover all the technology revealed and fielded

related to the KZA-100 and KZA-200 key-cutting machines in this litigation.  Hy-Ko takes the

position that it was Hillman that initiated the '747 patent dispute; and that Hillman should not

now be allowed to dismiss the '747 counterclaims in a limited manner that does not resolve all

the issues between the parties.

  Hy-Ko argues that Hillman asserted broad '747 claims against Hy-Ko's "exemplary"

key-cutting machines (*i.e.,* KZA-100 and KZA-200); then gathered information through

discovery concerning Hy-Ko's future plans; and now attempts to dismiss its broadly asserted

---

  [3]  The Court notes that there is no covenant in place yet since Hy-Ko and Hillman have not been able to reach an agreement as to what the scope of the covenant should be.

(5:08 CV 1961)

"exemplary" claims only against specific – not exemplary – Hy-Ko machines.  In other words,

Hy-Ko argues that at the time of the filing of the '747 counterclaims, Hillman alleged that Hy-

Ko's KZA-100 and KZA-200 machines were merely "exemplary" of Hy-Ko's alleged '747

patent infringement; but that now, after Hillman has learned of additional technology relating to

a new and improved KZA-200 that has already been placed in commercial use, Hillman seeks to

dismiss only specific versions of Hy-Ko machines (KZA-100 and the older model of KZA-200)

and then to say that these specific versions constitute the entire '747 patent dispute.

E.      The Key-Cutting Machines at Issue:

        To conduct any fairly reasoned analysis of Hillman's pending motion, the Court must

bear in mind that three different models of key-cutting machines [4] are involved, only two of

which are actually identified in the pleadings.  In an attempt to achieve clarity, the Court will

refer to the three different models as follows:

        1.      First Generation:       "KZA-100"
        2.      Second Generation:      "Interim KZA-200"
        3.      Third Generation:       "Completed KZA-200"

The first and second generation models (KZA-100 and Interim KZA-200) are specifically

identified as allegedly infringing the '747 patent.  The third generation model (Completed KZA-

200) has not been specifically identified in the pleadings but, as discussed below, the Completed

KZA-200 is at the very heart of the parties' disagreement over the present motion.

        In its Brief in Opposition to Hillman's motion, Hy-Ko explains that it initially

manufactured and leased the first generation KZA-100 machines in March 2007; and that shortly

_____

        [4] To use Hy-Ko's language, the machines are more properly referred to as "integrated
key identification and cutting machines."  *See* ECF 57 at p. 4.

6

(5:08 CV 1961)

thereafter, Hillman alleged that the key-cutting portion of the KZA-100 infringed Hillman's '894 patent.  Hy-Ko says that, before Hillman filed its initial lawsuit in Arizona in December 2007, Hy-Ko commenced a program to develop the second generation model, the Interim KZA-200, which has a number of improvements.  Hy-Ko states that it has manufactured an initial production run of 164 of the second generation Interim KZA-200 machines and has deployed them to Wal-Mart stores.  Hy-Ko states that it has also completed the development of the third generation Completed KZA-200 machines and has placed one such machine into a Wal-Mart store in Macedonia, Ohio for testing.  Hy-Ko further explains:

> The [third generation Completed KZA-200] includes two primary elements partially present, but not activated, in the initial production of [the second generation Interim KZA-200] systems previously deployed to Wal-Mart stores: (a) bitting analysis and (b) groove scanning using an additional camera and light source . . . .  The [second generation Interim KZA-200] . . . has the software and many hardware elements necessary to incorporate the [third generation Completed KZA-200].

ECF 57 at p. 4.

Hillman notes, however, that the Completed KZA-200 had not been placed into the field "as of the date of Hillman's covenant not to sue."  ECF 52 at p. 11.  Hillman therefore argues that the Completed KZA-200 is merely a "product in the pipeline," and that a covenant not to sue need not include such pipeline products in order to divest the Court of declaratory judgment jurisdiction.  ECF 52 at pp. 10-11.

Hy-Ko counters essentially that Hillman proffered a limited  covenant not to sue as to the KZA-100 and Interim KZA-200, but only after obtaining discovery sufficient to place Hillman

7

(5:08 CV 1961)

on notice that a machine such as the Completed KZA-200 existed and would shortly be placed in commercial use.  Hy-Ko questions Hillman's motive for filing the present motion:

> Hillman's offer of dismissal does not resolve the issues between the parties, but is instead a device to preserve a cloud of uncertainty and hamper Hy-Ko's efforts to improve the machines that have provided Hillman with substantial competition.  Permitting Hy-Ko's declaratory judgment claims relating to the '747 patent to remain in this lawsuit is the only fair way to provide Hy-Ko any certainty and predictability as to any alleged infringement of its machines.  Alternatively, if Hillman wishes to dismiss its '747 claims, it should be required to do so as to all of Hy-Ko's current technology.

ECF 57 (Brief in Opposition) at pp.  2-3.

For the reasons that follow, the Court agrees with Hy-Ko's position.

## II.  LAW AND ANALYSIS

A.    <u>Standard of Review under Rule 15(a)(2)</u>:

Fed. R. Civ. P. 15(a) governs amendments of pleadings before trial.  Hillman's present motion to amend is filed under Fed. R. Civ. P. 15(a)(2), under which a party may amend its pleadings only with the opposing party's written consent or the court's leave.  Whether to grant leave to amend is within the court's discretion.  *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971); *Estes v. Kentucky Utilities Co.,* 636 F.2d 1131, 1133 (6th Cir. 1980).  However, absent any apparent bad faith or undue prejudice to the opposing party, leave to amend should be freely granted.  *Foman v. Davis,* 371 U.S. 178, 182 (1962).

In the present case, Hillman's position is that its "actions to promptly dismiss its '747 patent infringement claims after limited discovery and to seek an overall expeditious resolution of this case [demonstrate] good faith and [do] not prejudice plaintiffs."  ECF 52 at p. 10.  Hy-Ko disagrees unless Hillman is willing to give Hy-Ko a complete release as to all three key-cutting

8

(5:08 CV 1961)

machine models including the third generation Completed KZA-200 (*i.e.,* the model which has not been specifically identified in the current pleadings but which has been placed in the Macedonia Wal-Mart store for testing).

Hy-Ko asserts that its Interim KZA-200 machine includes technology that Hillman refuses to dismiss, thereby undermining Hy-Ko's efforts to resolve its entire '747 dispute with Hillman.  Hy-Ko notes that Hillman has taken several depositions at which Hillman raised issues implicating potential '747 claims against the Completed KZA-200; that Hillman has refused Hy-Ko's offer to make the Completed KZA-200 available for physical inspection; that Hy-Ko's third-party engineering consultants have been subpoenaed and have been expending efforts in an attempt to comply with Hillman's discovery requests relating to the '747 patent; and that Hy-Ko has already spent a considerable amount of time and money in an effort to advance the '747 litigation which has delayed resolution of the '894 litigation.  See ECF 57 at pp. 3-5.

The Court finds that, pursuant to the standard for reviewing Rule 15(a)(2) motions for leave to amend, Hy-Ko has established that Hy-Ko would be unduly prejudiced if the Court were to grant Hillman leave to amend its counterclaim.   The Court will now turn to the issue of subject matter jurisdiction.

B.      The Jurisdictional "Case or Controversy" Requirement:

Under the Declaratory Judgment Act, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  It is well established

9

(5:08 CV 1961)

that the party seeking declaratory relief bears the burden of proving the existence of a "case of actual controversy" by demonstrating that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941).   As the Supreme Court more recently explained, a case of actual controversy means one that is "definite and concrete, touching the legal relations of parties having adverse legal interests," and that it be "real and substantial" and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007).

Patent litigation has been held to be "particularly adapted to declaratory resolution." *Capo, Inc. v. Dioptics Med. Prods., Inc.,* 387 F.3d 1352, 1357 (Fed. Cir. 2004).  Further, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp. v. STMicroelecs, Inc.,* 480 F.3d 1372, 1381 (Fed. Cir. 2007).  Nonetheless, "an actual controversy cannot be based on a fear of litigation over future products." *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 855 (Fed. Cir. 1999).

Thus the case law teaches that, in an infringement action, a patentee's covenant not to sue may eliminate subject matter jurisdiction for related declaratory judgment claims, if the covenant is broad enough to include all the products accused of infringement.  However, in the present case, first, there *is* no covenant not to sue because the parties have not agreed to its terms.

10

(5:08 CV 1961)

Second, Hillman's *proffered* covenant does not cover all the products accused of infringement. As noted earlier, Hillman has alleged that the KZA-100 and Interim KZA-200 are mere examples of infringing Hy-Ko products. Further, Hillman's Prayer for Relief seeks an injunction as to "*any* products that infringe the '747 patent . . . ." Hy-Ko's third generation key-cutting machine, the Completed KZA-200, has already been made and placed into a Wal-Mart store for testing and is therefore presently in commercial use; and Hillman has refused to provide Hy-Ko a covenant not to sue with respect to the Completed KZA-200 machine.

The Court concludes that Hy-Ko has demonstrated the existence of a "case of actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). The Court further concludes that, even if the Court were to grant the first branch of Hillman's motion (*i.e.*, to amend its pleadings to dismiss the '747 counterclaims with prejudice), such dismissal would not deprive the Court of subject matter jurisdiction over Hy-Ko's '747 declaratory judgment claims.

The Court notes that Hillman's present motion has been filed in the conjunctive and not the disjunctive. In other words, it is a motion for "all or nothing" relief. Hillman essentially says that it should be allowed to dismiss its '747 counterclaims, *and it follows that* Hy-Ko's '747 declaratory judgment claims should also be dismissed. For the reasons stated above, however, in the Court's view that is not the case. The Court suspects that Hillman would probably not wish to have the first branch of its motion sustained and the second branch denied. Accordingly, the Court will deny the motion in its entirety.

11

(5:08 CV 1961)

## III.  CONCLUSION

For the reasons set forth above, the Court rules and orders as follows:

1.      Hillman's Motion for Leave to Amend the Pleadings to Dismiss its Claims for Infringement of the '747 Patent and to Dismiss Hy-Ko's Declaratory Judgment Claims Relating to the '747 Patent (ECF 52) is denied.

2.      Hy-Ko and Aurora shall have leave until December 7, 2009 to respond to Hillman's restated counterclaim set forth in The Hillman Group's Second Amended Answer to Plaintiffs' Second Amended Complaint (ECF 38).

3.      The parties are directed to confer and revise their previously filed case management plans (ECF 51 and 55) to propose an agreed unified case management plan for both the '894 and '747 Patents by December 14, 2009.

IT IS SO ORDERED.

  November 23, 2009            *s/ David D. Dowd, Jr.*
Date                          David D. Dowd, Jr.
                              U.S. District Judge

12